# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **WYTEX PRODUCTION CORPORATION,** an Arkansas corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CIV-12-339-JHP |
| **XTO ENERGY, INC.,** a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER

This matter comes before the Court on Plaintiff's ("Wytex") Motion for Partial Summary Judgment (Dkt. # 51) and Defendant's ("XTO") Motion for Partial Summary Judgment (Dkt. # 52).

## STATEMENT OF UNDISPUTED FACTS

On April 18, 2008, Wytex and XTO entered into a written letter agreement, as amended on May 28, 2008, wherein Wytex assigned to XTO a portion of its leasehold interests in Sections 22 and 23, Township 4 North, Range 11 East, Hughes County, Oklahoma and Section 8, Township 4 North, Range 12 East, Pittsburg County, subject to the terms set forth therein. The written agreement covered "the purchase" of a portion of the undivided leasehold interests of certain Oil and Gas leases owned by Wytex amounting to approximately 219.26 net mineral acres in Section 22; 470.46 net mineral acres in Section 23; and 30 net acres in Section 8. Wytex retained 155.26 net acres in Section 22; 160.00 net

acres in Section 23; and 64 net acres in Section 8.[1]  The purchase of these leasehold interests were subject to various terms and conditions set out in the written letter agreement.

In addition to the retained net acres, Wytex retained an overriding royalty interest as set out in the letter agreement.  Dkt. No. 55-1, at p. 3.  Wytex also retained a "20% Carried Working Interest through Completion" in the initial well drilled on or pooled with the leases in both Section 22 and Section 23.  Dkt. No. 55-1, at p. 4.  In Section 8, Wytex only retained a "10% carried working interest through Completion (proportionately reduced to Seller's reserved working interest in each such Section)."  *Id*.  Moreover, "Carried Working Interest" was defined by the agreement to "mean that Wytex will not be liable for or pay any expenses incurred in the drilling, testing or completion attributable to the interest being carried in the respective initial test wells."  *Id*.   Wytex also reserved a overriding royalty interest.  *Id*., at p. 3.  The amendment to the letter agreement, assigned, transferred, set over and conveyed to XTO all of Wytex's "undivided interest in and to the oil and gas leases . . . ."  Dkt. No. 55-1, at p. 20.  Finally, the amended agreement contains a provision which indicates that the Overriding Royalty Interest reserved herein is based upon an assumption that "each Lease covers the entire oil, gas and mineral leasehold estate created by such Lease;. . . ."  *Id*., at p. 21.

---

[1]Despite both parties admitting that terms of the letter agreement are undisputed, Bill Jenkins, president and owner of Wytex, testified he has 128 net acres in Section 22 and 128 net acres in Section 23.  Dkt. No. 52-1, at pp. 11-12.  Additionally, the letter dated January 28, 2011, seeking to participate with one-half of its interest indicates 10% of the working interest is 64 acres.  Dkt. No.  55-2, at p. 2.  Neither of the motions for partial summary judgment indicate how the number of retained acres was decreased.  Accordingly, this Court will use the undisputed amounts of retained acreage contained in the written agreement which the parties have asked to have enforced herein.

The parties disagreement over the actual terms of their written agreement centers on the meaning of Paragraph 6 of the agreement which provides as follows:

> On any well drilled in each Section subsequent to the initial well in each Section, Seller will have the right to participate in the drilling, completion and operation of such wells to the extent of its retained working interest in the Leases in accordance with all terms and conditions of the applicable Operating Agreement. The initial test wells within said Properties will be drilled in their respective units prior to further development within said units unless mutually agreed to. However, in the event Seller elects not to participate or participate with a lesser interest, in lieu of Seller going non-consent, Seller may extend this agreement on a well by well basis on said properties.

In January 2011, XTO submitted proposals to Wytex for the drilling of five oil and gas wells on Sections 22 and 23 in Hughes County, advising Wytex that it needed to elect whether it desired to participate with its retained interest in these wells subject to the Operating Agreement. Each of these wells had an estimated completion cost in excess of $5.5 million. The total five well drilling and completion program had an estimated cost of $28,271,500.00. Upon receipt of these well proposals, Wytex advised XTO that it elected to participate with one-half of its interest to XTO in exchange for payment on a per well, per acre basis totaling $1,760,000.00. XTO has refused to make payment to Wytex on a well by well basis claiming, despite the provisions of paragraph 6, they are not required to pay multiple times for the same working interest.

## **LEGAL ANALYSIS**

Plaintiff's Complaint seeks (1) a declaratory judgment regarding the meaning of the agreement with XTO and (2) a finding that XTO has breached its contract with Plaintiff.

3

XTO, on the other hand, argues Plaintiff's interpretation of the agreement is contrary to the language of the agreement and Oklahoma law.

Summary judgment is appropriate where there is no dispute of material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56. When presented with a summary judgment motion, this Court must determine whether there "are any genuine factual issues that properly can be resolved only by the finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When evaluating a motion for summary judgment, this Court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988). The party opposing summary judgment, however, "may not rest upon mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The primary consideration when construing an oil and gas lease is to give effect to the intention of the parties if ascertainable from the four corners of the contract. *Roye Realty & Developing, Inc. v. Watson*, 2 P.3d 320 (Okla. 1996). The judicial function of this Court is to enforce the contract as it is written. *Great Western Oil & Gas Co. v. Mitchell*, 326 P.2d 794, 798 (Okla. 1958). Under Oklahoma law, the cardinal consideration in the construction of contracts is the intent of the parties. *Universal Underwriters Inc. Co. v. Bush*, 272 F.2d

675 (10th Cir. 1960); *Gillham v. Jenkins*, 244 P.2d 291 (Okla. 1952); and *Washoma Petroleum Co. v. Eason Oil Co.*, 49 P.2d 709 (Okla. 1935). If a contract is complete in itself and is unambiguous, when viewed in totality, "its language is the only legitimate evidence of what the parties intended. The parties' 'intention cannot be determined from the surrounding circumstances, but must be gathered from a four-corners' examination of the instrument.'" *Palace Exploration Co. v. Petroleum Development Co.*, 374 F.3d 951, 953 (10th Cir. 2004) (citations omitted).

It is undisputed that Wytex "assigned"[2] a portion of its leasehold interests in Sections 22 and 23, retaining a 20% working interest in the net acres sold. According to the letter agreement, Wytex's working interest was 155.26 acres in Section 22 and 160 acres in Section 23. When XTO proposed three additional wells in Section 23 and two additional wells in Section 22, Wytex advised XTO it wanted to participate in the wells in each section with 10% of its working interest and to sell XTO the other 10% of its working interest. A sale of one-half of the working interest reflected within the letter agreement would amount to 77.63 acres in Section 22 and 80 acres in Section 23. While Section 6 of the agreement allows Wytex to elect to "not participate or participate with a lesser interest" in lieu of going non-consent, this section also gave Wytex the right to extend the agreement on a well by well basis. The Court finds, if Wytex chose to extend the agreement as to the five additional wells, it could insist that XTO pay $5,500 per net mineral acre as contained in Section 1 of

---

[2] Wytex admitted it "assigned" the leases even though the letter agreement indicates a "purchase" of a portion of the undivided leasehold interests was made.

5

the letter agreement. Wytex could not, however, sell its 10% working interest more than one time. Based upon the net mineral acres reflected within the letter agreement, a sale of a 10% working interest in Wytex's property would equal 157.63 acres at $5,500.00 per acre, or $866,965.00.

Accordingly, this Court finds there is an enforceable contract between Wytex and XTO which allows Wytex to agree, on a well by well basis, whether to extend the terms of the letter agreement to all wells proposed after the wells initially contemplated. Under the terms of the agreement, Wytex can sell any of its retained working interest for $5,500 per acre prior to the drilling of any additional wells. Wytex can not, however, sell any of its retained working interest more than one time. Therefore, this Court grants Wytex's motion for partial summary judgment (Dkt. No. 51) in part and denies it in part. Additionally, this Court grants XTO's motion for partial summary judgment (Dkt. No. 52) finding that XTO is only required to pay one time for any additional undeveloped reserved acreage owned by Wytex.

Based upon the evidence presented to this Court, however, it is impossible for this Court to ascertain whether or not a breach of the contract has occurred. While it is clear that XTO disagreed with the amount of money needed to pay Wytex for their working interest, there is no evidence that XTO made any payments to Wytex. Furthermore, there is no evidence which would indicate that XTO has begun drilling the 5 new proposed wells. Accordingly, Wytex's request that this Court find a breach of the contract has occurred is denied.

It is so ordered this  25th  day of July, 2014.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma